IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT VILLANUEVA, § | | |
| TDCJ # 1662449, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| VS. § | | CIVIL ACTION NO. 3:17-114 |
| § | | |
| LORIE DAVIS, Director, Texas § | | |
| Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

# MEMORANDUM OPINION AND ORDER

Petitioner Robert Villanueva filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) ("Petition") claiming that he is actually innocent of the murder for which he was convicted. Villanueva is confined in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Respondent filed a Motion for Summary Judgment (Dkt. 10) arguing that the Petition is time-barred, along with the relevant state court records (Dkt. 11, 12, & 13). Villanueva responded to the Motion (Dkt. 15 & 16) and also has filed numerous requests to supplement his Petition (Dkt. 3, 14, 17, 18 & 19). After reviewing all of the parties' filings, the record, and the applicable law, the Court concludes that Respondent's motion should be granted and that the Petition should be dismissed as time-barred.

## I. BACKGROUND

In 2010, the State tried Petitioner Robert Villanueva for murder in connection with the October 5, 2007, death of Albert Lacy. He was tried before Judge Wayne Mallia in the 405th District Court for Galveston County, Texas, Case No. 08-CR-3051. Winston E. Cochran, Jr. represented Villanueva at trial. Villanueva was tried alone but the prosecution argued that he had acted with multiple people, including Marcus Shuff.[1] Villanueva's jury was instructed on the law of parties, which provides as follows:

> A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

TEX. PENAL CODE § 7.02(a)(2).

Before trial, on October 7, 2008, Villanueva had made a video confession. Cochran moved to suppress the confession but the court denied the motion, determining that Villanueva "freely, knowingly and voluntarily waived his constitutional rights and gave a voluntary statement" to law enforcement. *See* Clerk's Record (Dkt. 11-4) at pp. 168-69.[2] The jury found Villanueva guilty of murder, and sentenced him on September 10, 2010, to fifty years confinement in TDCJ. The court entered judgment and sentence (Dkt. 11-1).

---

[1] Shuff separately was convicted of murder in connection with Lacy's death. *See Shuff v. State*, No. 01-12-00034-CR, 2013 WL 1858923 (Tex. App.–Hou. [1st Dist.], 2013, pet. ref'd).

[2] In this Memorandum, all page citations to state court records refer to the Bates-stamped numbers on the lower right corner of the page.

Villanueva filed an appeal to the Court of Appeals for the 14th District of Texas in Houston, Cause No. 14-10-01004-CR. Thomas Allan Martin represented him on direct appeal. The Court of Appeals affirmed his conviction on January 24, 2012. *Villanueva v. State*, No. 14-10-01004-CR, 2012 WL 195524 (Tex. App.–Hou. [14th Dist.] 2012, no pet.).

On January 26, 2014, proceeding *pro se*, Villanueva filed a state habeas writ claiming that Cochran rendered ineffective assistance as his trial counsel. *See* State Court Record, WR-81,669-01 (Dkt. 13-1 through Dkt. 13-9). Cochran filed an affidavit in response to the claim. On June 26, 2014, Judge Michelle Slaughter of the 405th District Court entered Findings of Fact and Conclusions of Law recommending denial of habeas relief. *Id*. (Dkt. 13-9) at pp. 70-71. The Texas Court of Criminal Appeals denied the application without written order on July 30, 2014 (Dkt. 13-5).

On December 17, 2015, Villanueva filed a "Request for Leave to File his Petition for Writ of Mandamus," complaining that Judge Slaughter had not ruled on a motion for DNA testing he had filed on November 12, 2015. *See* State Court Record, WR-81,669-02 (Dkt. 13-10 & 13-11). Judge Slaughter appointed attorney Mark Stevens to make a recommendation regarding DNA testing. On January 13, 2016, the Texas Court of Criminal Appeals denied his request for leave to file the petition (Dkt. 13-10).

On August 9, 2016, Villanueva filed a second state habeas petition asserting that newly discovered evidence justified relief. *See* State Court Record, WR-81,669-03 (Dkt.

13-12 through Dkt. 13-17). To overcome the bar on subsequent writs,[3] Villanueva claimed that several pieces of evidence were newly discovered, including a 2009 video confession from Shuff. He also relied on a 2015 letter purportedly from attorney Holly Cooper-Roell concerning unfairness at Villaneuva's trial. *See* Appendix B to Petition ("Cooper-Roell Letter").[4] Finally, Villanueva claimed to have new DNA evidence from the hair recovered from Lacy's hand because, on July 2, 2016, the Galveston district attorney sent him a letter stating that the DNA mixture from his case had potential limitations. *See* Appendix E to Petition ("2016 DA Letter").[5] Previously, no DNA

---

[3]  *See* TEX. CODE CRIM. PROC. art. 11.07 § 4(a) ("If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that: (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt").

[4]  The Cooper-Roell Letter is addressed to Villanueva and Judge Slaughter and dated July 8, 2015. It states:

> I know that you were NOT granted a fair trial. I now remember and know many details regarding Mr. Cochrans' [sic] representation of you at trial. He told me in confidence the prosecutor did turn over more evidence in the middle of trial. He told me the month of your conviction that Mr. Reed had evidence secreted [by him] I guess, is what you call it.

*Id*. (alternation in original). The letter contains various salacious statements about Cochran, the medical examiner, and others, and concludes, "I will cooperate with the sentencing court because trust me I have a whole lot more to say." *Id*.

[5]  The 2016 DA Letter informed Villanueva that he had been prosecuted "for an offense that included the analysis of DNA mixture evidence by a Texas crime laboratory," that "DNA evidence has become more complicated over the last 5-10 years," and that the "Texas Forensic Science Commission is in the process of working with prosecutors, defense attorneys and

(continued on next page …)

profile had been obtained from the hair recovered from Lacy's hand, as evidenced by a 2011 letter from the Department of Public Safety ("DPS"). *See* Appendix D to Petition ("2011 DPS Letter"). On September 20, 2016, Judge Slaughter signed Findings of Fact and Conclusions of Law recommending denial of relief because Villanueva had not met the standards to bring a subsequent writ. *See* State Court Record, WR-81,669-03 (Dkt. 13-9) at pp. 128-29. On October 12, 2016, the Court of Criminal Appeals dismissed his writ without written order (Dkt. 13-12).

On August 26, 2016, while Villanueva's second habeas petition was pending, Stevens reported to Judge Slaughter, stating, "I cannot argu[e] that Chapter 64 authorizes an order of DNA testing" in Villanueva's case. Appendix C to Petition ("Stevens Letter") (referring to TEX. CODE CRIM. PROC. art. 64.03 (requirements for forensic DNA testing)). Stevens explained:

> Mr. Villanueva was found guilty under a charge which included an instruction under the law of the parties. Even if the hairs or other materials were found to be those of another individual, *e.g.*, the person who wielded the bat or other instrument that caused the death, it would not exculpate Mr. Villanueva for complicity under the charge given to the jury.

*Id*.

On April 7, 2017, Villanueva filed his *pro se* Petition in this Court. His Petition claims that he is actually innocent based on new evidence not presented at his trial, including Shuff's 2009 confession, DNA evidence, and the Cooper-Roell Letter. He also

---

laboratories to determine which cases may have problems." It then instructed Villanueva to complete and submit an attached form if he would like his case "recalculated on the DNA mixture issue" (*id*.).

refers to a glass crack pipe, which he claims was favorable evidence but was withheld, and a red-handled hammer, which he identifies as "false" evidence. His post-Petition filings in this Court additionally claim violations of his constitutional rights to confront witnesses, effective assistance of counsel, and due process

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

## III. ANALYSIS

### A. One Year Statute of Limitations

Respondent argues that Villanueva's Petition is not timely. Section 2244(d) of the AEDPA provides for a one-year limitations period:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Villanueva's conviction was affirmed on direct appeal on January 24, 2012. He did not file a petition for discretionary review with the Court of Criminal Appeals, and the time to do so expired thirty days after the appellate court judgment. *See* TEX. R. APP. P. 68.2(a). Under Section 2244(d)(1)(A), "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" therefore is February 23, 2012, and the one-year limitations period expired on February 23, 2013. His federal petition, filed on April 7, 2017, was over four years late, and is time-barred unless an exception applies.

Although Section 2244(d) provides for later accrual dates in certain circumstances, none apply in this case. Villanueva does not allege that he was subject to state action that impeded him from filing his petition in a timely manner, nor that a newly recognized

constitutional right entitles him to relief. *See* 28 U.S.C. § 2244(d)(1)(B) & (C). To the extent Villanueva relies on Section 2244(d)(1)(D), he has not shown that he brings any claim within one year of discovering its "factual predicate." *See Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir. 2012). Villanueva clearly was aware of the Shuff video statement during his 2010 trial, long before he filed this Petition in 2017. *See* Trial Transcript, Vol. 8 (Dkt. 12-8) at pp. 50-66. Similarly, he was aware of the Cooper-Roell Letter in July 2015, more than one years before Villanueva's state writ filed August 9, 2016, and nearly two years before his federal Petition. Regarding DNA evidence, Villanueva does not identify any new evidence that could be the "factual predicate" for a claim. The 2016 DA Letter merely informed Villanueva that he could request a recalculation of the DNA mixture from his case based on more recent forensic science, but did not reveal the existence of new evidence.[6] Villanueva therefore has not shown that he filed his Petition within one year of the date he became aware of the "factual predicate" for any claim he now asserts.

Finally, the statutory tolling period under Section 2244(d)(2) does not render Villanueva's Petition timely. The AEDPA provides that the time during which a "properly filed" application for state collateral review is pending does not count towards the AEDPA's limitations period. *See* 28 U.S.C. § 2244(d)(2). However, this tolling provision does not extend Villanueva's filing deadline because his state habeas

---

[6] Moreover, as Stevens stated in his report to the court, additional DNA testing on the hair sample could not exculpate Villanueva because he was convicted based on the law of the parties. *See* Stevens Letter.

Page **8** of **15**

applications were filed in 2014 and 2016, *after* the AEDPA's one year limitation period already had expired. *See Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013).

Accordingly, there is no statutory basis to save Petitioner's late-filed claims.

B. **Equitable Tolling**

To the extent Villanueva relies on equitable tolling of the limitations period, his argument fails for reasons identical to those stated above. A petitioner is entitled to equitable tolling of the limitations period "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is available only in rare and exceptional circumstances. *Mathis v. Thaler*, 616 F.3d 461, 475 (5th Cir. 2010). Villanueva knew of the facts supporting his claim---for example, the 2009 Shuff confession or the 2015 Cooper-Roell Letter---long before he brought them to the courts. He has not shown due diligence in bringing his claims, and does not identify any "extraordinary circumstance" that prevented him from doing so. In addition, Villanueva has failed to show the existence of a claim for which "'strict application of the statute of limitations would be inequitable.'" *See In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)).

C. **Actual Innocence Exception**

Actual innocence, if proved, serves as an equitable exception to the limitations period in Section 2244(d) and allows a "gateway" for a petitioner to present claims that otherwise would be barred. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). A showing of

actual innocence is "rare" and requires a petitioner to show that, "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Although a petitioner is not required to show diligence, as would be required for equitable tolling, the timing of the petition "is a factor bearing on the 'reliability of the evidence' purporting to show actual innocence." *Id*. at 386-87 (quoting *Schlup*, 513 U.S. at 332); *id*. at 399. In other words, if a petitioner has delayed in bringing his claim of actual innocence, that delay is a factor relevant to the reliability of his evidence. *Id*. at 399.

Evidence that was previously available is not "new" evidence, even if it was not presented to the petitioner's jury. *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998). Moreover, new evidence must be "material," and not "merely cumulative or impeaching" evidence. *Id*. at 1075 n.3 (internal quotation marks and citation omitted).

Villanueva claims four pieces of evidence support his claim of actual innocence: the 2009 Shuff confession; the 2016 DA Letter regarding DNA evidence; irregularities regarding the glass crack pipe and the red-handled hammer; and the Cooper-Roell Letter. The Court will address each in turn.

### 1. Shuff Confession

Villanueva contends that the 2009 confession by Shuff, who was tried separately for the murder of Lacy, was not presented to Villanueva's jury and supports his actual innocence claim. First, the Shuff confession is not "new" evidence because it was available to Villanueva at his trial. *See Lucas*, 132 F.3d at 1074. In fact, Cochran

extensively questioned the officer who took the confession and argued for the confession's admission. *See* Trial Transcript, Vol. 8 (Dkt. 12-8) at pp. 50-66. Second, Shuff's confession cannot serve to demonstrate that "no juror, acting reasonably, would have voted to find [Villanueva] guilty beyond a reasonable doubt." *See McQuiggin*, 569 U.S. at 386. Villanueva was convicted under the law of the parties, which permits conviction for the conduct of another person if the defendant acts "with intent to promote or assist the commission of the offense" and "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See* TEX. PENAL CODE § 7.02(a)(2). Shuff's confession to his involvement in Lacy's murder does not exculpate Villanueva for Villanueva's own criminal conduct under the law of the parties.

        **2.    DNA Evidence**

Villanueva's Petition alleges that the hair recovered from the Lacy's right hand was inadequately tested for DNA evidence. He urges that the hair should have been tested by a "newly discovered" method of DNA testing that was not available at the time of his trial. He points to the 2011 DPS Letter showing that no DNA profile had been obtained from the hair in Lacy's hand, and the 2016 DA Letter stating that new testing methods had become available.

Villanueva has failed to show the existence of new evidence, because he does not show or allege that any new DNA profile has ever been obtained from the hair sample. He thus directs the Court's attention to no new evidence that could demonstrate that "no

juror, acting reasonably, would have voted" to convict him, as *McQuiggin* requires.[7]

Indeed, even if new testing on the hair were to yield a DNA match to a different person, such evidence could not establish Villanueva's actual innocence under the law of the parties. *See* Stevens Letter (explaining that because "Villanueva was found guilty under a charge which included an instruction under the law of the parties," even DNA evidence linking the hair or other materials to a different person "would not exculpate [him] for complicity under the charge given to the jury").

### 3. Glass Crack Pipe and Red-Handled Hammer

Villanueva briefly asserts that a "glass crack pipe" was missing from evidence and would have supported the "one sole actor theory."[8] He does not explain the theory or how it could show his actual innocence, and therefore has not met his burden to show that no rational juror would have voted to find him guilty if the glass crack pipe had been available. *See McQuiggin*, 569 U.S. at 386.

Regarding the red-handled hammer, Villanueva apparently argues that the hammer was presented at his trial but was never collected as evidence, and therefore that the

---

[7] Villanueva's trial jury in 2010 knew that the DNA evidence had not yielded evidence connected to Villanueva, but nevertheless convicted him.

[8] *See* Petition (Dkt. 1-1), Ground One ("Petitioner also presents evidence that his trial counsel colluded with the State to withhold or intentionally misplace favorable evidence to Petitioner's defense, (Glass crack pipe) Which supports the one sole actor theory"); Petition Memorandum (Dkt. 1-2) at pp. 14-15 ("Petitioner shows reference to the glass crack-pipe that was found near Lacy's body. Evidence that was intentionally withheld by the State in collusion with Defense Counsel. Proof of which is provided by testimony of Holy Roel [sic], a[n] officer of the court who assisted the defense counsel at trial").

Page **12** of **15**

hammer should have been excluded from evidence.[9]  However, Villanueva's statement that the hammer was used as trial evidence is flatly inaccurate, as revealed by the trial transcript.  *See* Trial Transcript, Vol. 11 (Dkt. 12-11) at pp. 145 (Cochran reminds jury in closing argument that "[W]e've never been shown any hammer.  No hammer recovered").  Moreover, Villanueva's argument that his evidence is "new" fails because, by his own argument, he knew about the evidence at trial.  *See Lucas*, 132 F.3d at 1074.

### 4.     Cooper-Roell Letter

Villanueva presents the 2015 Cooper-Roell Letter, which he claims is from an attorney on his defense team.  The Letter states that Cochran had told Cooper-Roell during the trial that the State turned over "evidence" during trial and "secreted" certain evidence.  The Letter does not identify the referenced evidence.

Villanueva apparently had this Letter, which was addressed to him, in July 2015.  He did not file a state habeas petition until August 9, 2016, and did not file his federal Petition until April 7, 2017.  This delay weighs against the reliability of his claim of

---

[9]     *See, e.g.*, Motion for Leave to File Habeas Corpus Rule 7 (Dkt. 14) at pp. 2-3 ("no red-handled hammer was showing to be collected as physical evidence or to be on hand according to the evidence/property list," but was presented at trial, thus "establish[ing] collusion by both the State prosecutor's [sic] and defense counsel conspiring to commit wrongfull [sic] prosecution through the use of false evidence"); Petitioner's Motion for Leave to File Supplemental Ground (Dkt. 17) at pp. 2 ("Defense counsel [Cochran] produced a red-handled hammer in front of the jury," which was "highly prejudicial, because petitioner in a false confession which the jury had just viewed on video stated the victim was killed by multiple actors on the front porch, where he was repeatedly struck by as hammer").  *See also* Evidence Affidavit from Galveston County Sheriff's Office (Exhibit 1 to Dkt. 15) (sheriff's investigator attests in affidavit that the red-handled hammer "was lying with other items on the residence's front porch" but "was never collected by investigators as physical evidence and was left at the scene when the investigation was concluded").

actual innocence. *See McQuiggin*, 569 U.S. at 399. More fundamentally, the Letter is vague and, standing alone, is insufficient to establish that no rational juror would have voted to convict him. *See id.* at 386.

Villanueva has not made the required showings under *McQuiggin* to pass through the actual innocence gateway with the evidence he now presents.

## IV. CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1. Respondent's Motion for Summary Judgment (Dkt. 10) is **GRANTED**.

2. Petitioner's requests for relief (Dkt. 3, 14, 17, 18, & 19) are **DENIED**.

3. The petition for habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) is **DISMISSED** as time-barred.

4. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 16th day of January, 2018.

_____
George C. Hanks Jr.
United States District Judge